1 **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8
Supermarket Energy Technologies, LLC,)      No. CV-10-2288-PHX-SMM
9                                      )
                Plaintiff/Counter-Defendant, )    **MEMORANDUM OF DECISION AND**
10                                     )        **ORDER**
vs.                                    )
11                                     )
Supermarket Energy Solutions, Inc.,    )
12                                     )
                Defendant/Counter-Claimant. )
13                                     )
                                       )
14   ───────────────────────────────── )

15          Before the Court is Plaintiff/Counter-Defendant Supermarket Energy Technologies,

16   LLC's ("Plaintiff") Motion for Partial Summary Judgment of Patent Infringement. (Doc. 48.)

17   Plaintiff alleges that Defendant/Counter-Claimant Supermarket Energy Solutions, Inc.

18   ("Defendant") has infringed on U.S. Patent No. 5,899,078 (the "'078 Patent"). Defendant has

19   responded (Doc. 50), Plaintiff has replied (Doc. 53), and the matter is fully briefed. The

20   Court will grant Plaintiff's motion.

21                                **BACKGROUND**

22          Plaintiff is a Phoenix, Arizona company that distributes products for reducing energy

23   use by refrigerator door and frame heaters, including a product covered by the '078 Patent.

24   (Doc. 1 at 2). Defendant is a Buffalo, Minnesota company that also distributes products for

25   reducing energy use by supermarket freezers. (Doc. 1 at 1-2.) Bruce Malwitz, a principal of

26   Defendant corporation, was formerly associated with Plaintiff and was aware of the '078

27   Patent through that previous association. (Doc. 1 ¶ 8; Doc. 22 ¶ 8.) Defendant allegedly

28   offered for sale a device that violated Plaintiff's '078 Patent. (Doc. 1 at 2.)

1    On October 26, 2010, Plaintiff filed a Complaint alleging: (1) Patent Infringement;

2    (2) Tortious Interference with Prospective Contractual Relations; and (3) Unfair Competition.

3    (Doc. 1.) On February 2, 2011, Defendant filed counterclaims for: (1) Declaratory Judgment

4    of Non-Infringement of Patent '078; (2) Declaratory Judgment of Invalidity of Patent '078;

5    and (3) Abuse of Process. (Doc. 22). Pursuant to presentations at a <u>Markman</u> hearing and the

6    parties' respective motions and memoranda, the dispute centered on the interpretation of five

7    terms in Claim 2 of the '078 Patent. <u>See</u> <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d

8    967, 979 (Fed. Cir. 1995), <u>aff'd</u> 517 U.S. 370 (1996). Claim 2 states as follows (terms which

9    were disputed are in bold):

10       Apparatus for controlling a condensation-preventing heater in a refrigeration unit, comprising:

11       a plurality of **sensing means** connected in parallel, for detecting the presence of condensation, each of said sensing means being mounted on the

12       refrigeration unit in proximity to said heater;
         **means, responsive to a control signal, for controlling power to said**

13       **heater**; and
         **control means**, responsive to the detection of condensation by said

14       sensing means, for providing said control signal so that power is applied to said heater only when condensation is present;

15       wherein each of said sensing means further comprises: an insulating substrate;

16       two electronically-isolated conductors arranged so that one conductor lies in close proximity to the other conductor;

17       whereby condensation forming on said sensing means raises the conductivity between said conductors; and

18       wherein said control means includes **means responsive to said**
         **increase in conductivity for providing said control signal**, including **means**

19       **for measuring the resistance between said conductors and for providing**
         **said control signal when said resistance is below a predetermined**

20       **threshold resistance**.

21    ('078 Patent col 5:43-6:11). Thus, the disputed terms for the Markman hearing were: (1)

22    sensing means; (2) means, responsive to a control signal, for controlling power to the heater

23    ("means for controlling power"); (3) control means; (4) means responsive to the increase in

24    conductivity for providing the control signal ("means responsive to conductivity"); and (5)

25    means for measuring the resistance between the conductors and for providing the control

26    signal when the resistance is below a predetermined threshold resistance ("means for

27    measuring resistance").

28       After considering the arguments raised by the parties in their briefings and at the

1    Markman hearing, the Court issued its Claim Construction Order. (Doc. 46.)

2    **LEGAL STANDARDS**

3    An evaluation of a claim of patent infringement involves a two-step analysis. Abbott

4    Labs. v. Novopharm Ltd., 323 F.3d 1324, 1329 (Fed. Cir. 2003). First, the court construes

5    the scope of the claims and then, second, compares the allegedly infringing device to the

6    construed claims. Id.  A product infringes a patent only if "every limitation of the patent

7    claim [can] be found in the accused device." Gen. Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d

8    978, 981 (Fed. Cir. 1997).

9    Summary judgment is as appropriate in patent cases as in any other type of case.

10   Paragon Podiatry Lab., Inc. v. KLM Labs., Inc., 984 F.2d 1182, 1190 (Fed. Cir. 1993);

11   Hodosh v. Block Drug Co.,786 F.2d 1136, 1141 (Fed. Cir. 1986).  Summary judgment of

12   non-infringement is appropriate if the court determines, after comparing the construed claims

13   to the accused product, that the party alleging patent infringement has failed to demonstrate

14   that each and every element of the asserted claims is met by a corresponding element in the

15   accused product. Zelinski v. Brunswick Corp., 185 F.3d 1311, 1316-17 (Fed. Cir. 1999).

16   "[M]eans-plus-function limitations[] [are] governed by 35 U.S.C. § 112, ¶ 6." Asyst

17   Techs., Inc. v. Empak, Inc., 268 F.3d 1364, 1369 (Fed. Cir. 2001).

18   An element in a claim for a combination may be expressed as a means or step
     for performing a specified function without the recital of structure, material or
19   acts in support thereof, and such claim shall be construed to cover the
     corresponding structure, material, or acts described in the specification *and*
20   *equivalents thereof.*

21   35 U.S.C. § 112(f) (2012) (emphasis added). Construction of means-plus-function claims is

22   a two-step process: (1) determination of claimed function, and (2) identification of the

23   corresponding structure performing the function. JVW Enters., Inc. v. Interact Accessories,

24   Inc., 424 F.3d 1324, 1330 (Fed. Cir. 2005) (citing Omega Eng'g, Inc. v. Raytek Corp., 334

25   F.3d 1314, 1321 (Fed. Cir. 2003)).

26   Literal infringement of a means-plus-function claim "requires that the relevant

27   structure in the accused device perform the identical function recited in the claim and be

28   identical or equivalent to the corresponding structure in the specification." Odetics, Inc. v.

- 3 -

1    Storage Tech. Corp., 185 F.3d 1259, 1267 (Fed. Cir. 1999). Structural equivalence is met

2    only if the differences are "insubstantial," in that the allegedly infringing structure "performs

3    the claimed function in substantially the same way to achieve substantially the same result"

4    as the patented structure. Id. Whether an accused device infringes a means-plus-function

5    claim as an equivalent is a question of fact. Id. at 1268.

6         A court must grant summary judgment if the pleadings and supporting documents,

7    viewed in the light most favorable to the nonmoving party, "show that there is no genuine

8    issue as to any material fact and that the moving party is entitled to judgment as a matter of

9    law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

10   Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive

11   law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248

12   (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the

13   outcome of the suit under the governing law will properly preclude the entry of summary

14   judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the

15   evidence must be "such that a reasonable jury could return a verdict for the nonmoving

16   party." Id.; see Jesinger, 24 F.3d at 1130.

17        A principal purpose of summary judgment is "to isolate and dispose of factually

18   unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against

19   a party who "fails to make a showing sufficient to establish the existence of an element

20   essential to that party's case, and on which that party will bear the burden of proof at trial."

21   Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The

22   moving party need not disprove matters on which the opponent has the burden of proof at

23   trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment "may not rest

24   upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific

25   facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); see Matsushita

26   Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint

27   Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

28                                    **DISCUSSION**

1    Plaintiff moves for summary judgment on its claim of infringement of the '078 Patent

2  by Defendant. (Doc. 48.) The Court has already construed the claims of the '078 Patent.

3  (Doc. 46.) Accordingly, the Court will now proceed to compare the allegedly infringing

4  device to the construed claims.

5    The '078 Patent claims are written using the means-plus-function limitation

6  methodology. Accordingly, the Court determined the claimed functions, and identified the

7  corresponding structure for each of the disputed means.

8  **I.    "Sensing Means"**

9    The Court determined the function of "sensing means" as detecting the presence of

10  condensation. (Doc. 46.) Consequently, the Court identified the corresponding structure

11  performing the determined function as two electrically isolated conductors, placed on an

12  insulating substrate, arranged so that one conductor lies in close proximity to the other

13  conductor where the formation of condensation on the corresponding structure raises the

14  conductivity between the conductors. (Id.) Finally, the Court found the usage of the words

15  "includes" and "including" in Claim 2 to be non-limiting; therefore, the claim limitation is

16  not restricted to only the preferred embodiment. (Id.) See Manual of Patent Examining

17  Procedure § 2111.03.

18    Plaintiff argues that Defendant's device uses multiple sensing means mounted in

19  parallel on a refrigeration unit to detect condensation, and that Defendant's device uses

20  sensing means consisting of two electrically isolated conductors in close proximity to each

21  other on an insulating substrate. (Doc. 48 at 6.) In support of this allegation, Plaintiff cites

22  the declaration of its expert witness Stephen Shelby, a person of ordinary skill in the art

23  related to the patented device. (Doc. 49 ¶¶ 1-2; Doc. 49-1 ¶ 6.)

24    Defendant offers no citation to any evidence which would serve to contradict

25  Plaintiff's claim that Defendant's device contains this element of Claim 2 of the '078 Patent.

26  (Doc. 53.)

27  **II.    "Means for Controlling Power"**

28    The Court determined the function of "means for controlling power" to be controlling

1    power to a condensation-preventing heater on a refrigeration unit in a way that is responsive

2    to a control signal. (Doc. 46.) Next, the Court identified the corresponding structure

3    performing the determined function as a relay where one terminal of the magnetic inductive

4    coil is connected to the output of a threshold-detector, and where the second terminal of the

5    coil is connected to the non-inverting input of the threshold-detector, and where the coil

6    controls relay terminals normally in the open position, and where the relay terminals are

7    connected in series between the condensation-preventing door heaters and the power source

8    for the door heaters. (Id.)

9         Plaintiff argues that Defendant's device also contains the "means for controlling

10   power" element of Claim 2. (Doc. 48 at 7.) Plaintiff, again through citation to the Declaration

11   of its expert, asserts that Defendant's device contains this element as well, because: one

12   terminal of a magnetic coil is connected to the output of a threshold detector and the second

13   terminal of the magnetic coil is connected to the voltage bus; the coil controls relay terminals

14   normally in the open position; and the relay terminals are connected in series between the

15   condensation preventing door heater and the power source for the door heater. (Doc. 48 at

16   7; Doc. 49-1 ¶ 7.)

17        Defendant offers no citation to any evidence which would serve to contradict

18   Plaintiff's claim that Defendant's device contains this element of Claim 2 of the '078 Patent.

19   (Doc. 53.)

20   **III.    "Control Means," "Means Responsive to Conductivity," and "Means for**

21   **Measuring Resistance"**

22        The Court first determined the function of "control means" to be providing a control

23   signal so that power is only applied to a condensation-preventing heater on a refrigeration

24   unit when condensation is present, and is responsive to the detection of condensation by the

25   sensors. Next, the Court identified the corresponding structure performing the determined

26   function as a pair of sensor lines, where one sensor line is connected to the non-inverting

27   input of an op-amp, and the other sensor line is connected to the inverting input of the op-

28   amp, and where the voltage bus is connected to the non-inverting input of the op-amp with

1   one of the sensor lines, and where the non-inverting voltage supplied from the voltage bus

2   is applied to the inverting input of the op-amp via a voltage divider made up of resistors

3   connected between the voltage bus and a ground, and where a capacitor is connected between

4   the non-inverting sensor line and a ground so that the control circuitry is not triggered by

5   spurious signals, such that an increase in the conductivity between the pair of the sensor lines

6   triggers the op-amp to send a control signal. (Doc. 46.) The Court also found that the

7   definition for "means responsive to conductivity," and "means for measuring resistance" are

8   contained within the definition for "control means." (Doc. 46.)

9        Plaintiff argues that Defendant's device contains this element of Claim 2. (Doc. 48

10   at 7.) Citing to the Declaration of its expert witness, Plaintiff asserts that Defendant's device

11   contains an equivalent control means, in that Defendant's device contains a "threshold

12   detector that provides a control signal to the means for controlling power so that power is

13   applied to the heater only when condensation is present." (Doc. 49-1 ¶ 8.) Plaintiff allows

14   that Defendant's control means is superficially different in that it measures voltage across

15   two conductors instead of resistance. (Doc. 48 at 8.) Plaintiff contends that this difference

16   is superficial only, however, in that measurement of voltage is equivalent to the measurement

17   of resistance for the purpose of determining the presence of condensation and thereby raising

18   conductivity.[1] (Doc. 41 at 8:9-11). Thus, Plaintiff contends that the threshold detector in

19   Defendant's device performs the same function in the same way as in Plaintiff's device.

20   (Doc. 48 at 8; Doc. 49-1 ¶¶ 9-10.)

21        Defendant offers no citation to any evidence which would serve to contradict

22   Plaintiff's claim that Defendant's device contains this element of Claim 2 of the '078 Patent.

23   (Doc. 53.) Defendant cursorily argues that the prosecution history of the claim shows that

24   Plaintiff originally limited Claim 2 to only a control means which measures resistance, and

25   thus that Plaintiff is estopped from arguing that Defendant's device is equivalent. (Doc. 50

26   at 7.) Defendant fails to cite to any appropriate evidence in support of this theory, however;

27

28        [1] During the Markman hearing, Plaintiff called an expert witness who testified that voltage and resistance are equivalent for the purposes described.

- 7 -

1  moreover, the Court notes that in its previous Claim Construction Order, it specifically found

2  that Defendant failed to provide "any clarification as to why the prosecution history lends

3  itself to Defendant's proposed definitions." (Doc. 46 at 14.)

4          Upon consideration of all disputed and undisputed facts, and making all reasonable

5  inferences from the facts in favor of the nonmoving party, the Court finds that Plaintiff

6  successfully shows that there is no genuine issue of triable fact as to whether Defendant's

7  device infringes the '078 Patent. Plaintiff supports its claim of infringement with citation to

8  the Declaration of its expert witness, a person of ordinary skill in the art related to the

9  patented device. Plaintiff's witness avows that due to the equivalency of resistance and

10 voltage, Plaintiff's device contains every element of Claim 2 of the '078 Patent. Plaintiff thus

11 supports its claim with reference to specific evidence showing that Defendant's device

12 infringes on the '078 Patent.

13         Defendant, on the other hand, fails to offer even token support of its disavowals,

14 resting its defense merely upon the argument of counsel without citation to any specific

15 factual evidence in the record. Further, Defendant repeats its argument that the history of

16 Plaintiff's claim prosecution shows that the '078 Patent does not encompass Defendant's

17 means of control structure. (Doc. 50 at 6-7). The Court found Defendant's theory

18 unpersuasive during claims construction, and finds it equally unpersuasive here, where

19 Defendant simply reasserts the argument, again without reference to specific supporting

20 factual evidence.

21         Defendant additionally argues that it raises three alternative grounds for denial of

22 Plaintiff's motion for summary judgment. (Doc. 50 at 2-5.) Defendant asserts: (1) that

23 Plaintiff has no standing to sue on the '078 Patent; (2) that a settlement agreement between

24 the parties in a prior case precludes Plaintiff from bringing the current action; and (3) that

25 Plaintiff's patent is invalid. (Id.)

26         The Court finds that Defendant fails to show that there is a genuine issue of material

27 fact on any of these grounds. In response to Defendant's unsupported claims that Plaintiff

28 has no interest in the '078 Patent, or has only a limited interest insufficient for this suit,

1  Plaintiff provides reference to its Exclusive License Agreement. (Doc. 53-4.) That document

2  purports to grant Plaintiff an exclusive license in the '078 Patent, including "sole and

3  exclusive right to initiate, prosecute, and pursue any and all claims or lawsuits to protect the

4  Patent including, but not limited to, claims or lawsuits that relate to claims of patent

5  infringement." (Doc. 53-4 at 2.) Defendant offers no factual evidence or legal authority to

6  contradict Plaintiff's status as licensee.

7        Similarly, Defendant fails to show that there exists a question of material fact as to

8  whether the prior settlement agreement bars Plaintiff's current claim. The settlement

9  agreement, which Defendant itself cites in its response to Plaintiff's motion, explicitly states

10 that any agreement to release the other from liability for infringement on the '078 Patent

11 "shall not apply to any actions taken by . . . [Defendant] in the future." (Doc. 51-1 at 5.) That

12 agreement was executed on November 26, 2008, and Plaintiff's present complaint alleges

13 continuing infringement. (Doc. 1.)

14       Defendant's claim that Plaintiff's patent is invalid is equally unsupported. Defendant

15 merely asserts, without reference to any verifiable factual source, that Plaintiff was offering

16 the device patented in the '078 Patent for sale prior to the date of the original patent

17 application. (Doc. 50 at 4.) Specifically, Defendant's entire argument on this point reads:

18 "Furthermore, the uncontroverted testimony and affidavit Bruce Malwitz that the product

19 was offered for sale more than a year prior to the patent application rendering the patent void

20 pursuant to the time bar." [sic] (Id.)

21       The Court notes that Defendant fails to direct the Court to the location of the affidavit

22 in the record. After locating the affidavit of Bruce Malwitz (Doc. 19-1) attached to a prior

23 filing (Doc. 19), however, this Court finds that even had Defendant properly referenced the

24 affidavit in its Response, Defendant fails to show that there is a genuine issue of material

25 fact. The lone, unsupported, and unspecific allegation of Bruce Malwitz, a principal of

26 Defendant corporation, is not reasonable evidence sufficient to raise a triable issue of fact.

27 Moreover, the Court notes that this portion of Bruce Malwitz's affidavit is indeed

28 controverted by Plaintiff's affidavit of Malcom Mager. (Doc. 53 at 8; Doc. 53-6 ¶¶ 13-14.)

1   Thus, Plaintiff makes a compelling showing that Defendant cannot reasonably dispute

2   the factual allegations which mandate summary judgment in Plaintiff's favor. Therefore, the

3   Court finds that Plaintiff has shown that there is no genuine issue of material fact suitable for

4   trial, and that it is entitled to summary judgment as a matter of law as to its claim of patent

5   infringement against Defendant.

6   Defendant's Response to Plaintiff's Motion for Partial Summary Judgment also

7   purports to constitute a cross-motion for summary judgment against Plaintiff on Defendant's

8   claim of abuse of process. (Doc. 50 at 8.) The Court will not construe Defendant's Response

9   as a cross-motion for summary judgment. Defendant has failed to properly move for

10  summary judgment under FED.R.CIV.P. 56, instead merely appending its asserted claim for

11  summary judgment in its Response to Plaintiff's motion. Moreover, Defendant fails to offer

12  any citation to legal authority or specific factual evidence in support of its argument, in

13  violation of Rules 7.2(b), and 56.1(e) of the Rules of Practice of the U.S. District Court for

14  the District of Arizona. Finally, even had Defendant properly moved for summary judgment

15  on this claim, the Court finds Defendant's argument without merit, because Defendant's

16  claim for abuse of process is necessarily premised on the theory that Plaintiff's claim for

17  infringement is groundless.

18  **CONCLUSION**

19  Based on the foregoing,

20  **IT IS HEREBY ORDERED GRANTING** Plaintiff's Motion for Partial Summary

21  Judgment of Patent Infringement. (Doc. 48.)

22  DATED this 24th day of September, 2012.

23

24

25  Stephen M. McNamee
    Senior United States District Judge

26

27

28